COMMISSIONERS OF ORANGE COUNTY v. R. D. BAIN.

(Filed 18 April, 1917.)

**Sheriffs—Successors—Taxes—Salaries — Tax Lists — Emoluments — Fees — Counties.**

While collecting the county taxes is made a part of the duties of a sheriff, it is a separate function, and exists after his term as such, for the purpose of collecting, from the tax lists in his hands, the taxes for the current year, in the absence of legislation to the contrary; and an act of the Legislature changing the pay of county officials from a salary to a fee basis, taking prospective effective from the expiration of the terms of the present incumbents, except the clerk, for whom it is to be effective two years later, will be presumed to have a sensible and just intent, with knowledge of existing conditions; and where it does not direct the incumbent sheriff to deliver the tax lists to his successor, it will not be construed as discriminative in favor of the clerk, register of deeds, or like officers, and to deprive the incumbent sheriff of the emoluments of his term by requiring that he deliver the tax lists to his successor. *Mills v. Deaton*, 170 N. C., 388, cited and distinguished.

BROWN, J., concurring; CLARK, C. J., dissenting.

APPEAL from judgment and order dissolving injunction and denying mandamus, rendered by *Daniels, J.,* at chambers, in DURHAM, 15 December, 1916.

This is an action to compel the defendant, former sheriff of Orange County, to turn over the tax lists of 1916 to Charles G. Rosemond, who was elected sheriff of said county in November, 1916.

The defendant R. D. Bain had served two terms as sheriff of Orange County, and was entering upon his third term when the General Assembly, on 29 January, 1915, enacted a law entitled "An act to fix salaries for public officers in Orange County," but the operation of the act was postponed to the end of the terms of the then county officers. At the end of his term, on the qualification of his successor, the plaintiff Charles G. Rosemond, on 9 December, 1916, the plaintiff commissioners made demand upon the defendant R. D. Bain for the tax list of 1916 and other books and papers of his office; but the defendant claimed that notwithstanding chapter 46 of Public Laws, 1915, he was entitled to collect the taxes for 1916. Proceedings for a temporary injunction and mandamus were brought by plaintiffs against the defendant, and being heard before F. A. Daniels, judge presiding, at chambers in Durham on 16 December, 1916, the temporary restraining order was dissolved and mandamus refused, the court below holding that it was not the intention of the act of 1915 to take from the outgoing sheriff the tax list of 1916.

The plaintiffs excepted and appealed.

*Frank Nash for plaintiff.*
*S. M. Gattis, S. M. Gattis, Jr., A. H. Graham, and John W. Graham for defendant.*

ALLEN, J. It has been the custom in this State for the retiring sheriff to collect the taxes due on tax lists already in his hands, and this custom has the sanction of numerous judicial decisions.

In *Fitts v. Hawkins,* 9 N. C., 396, *Talor, C. J.,* says: "A sheriff who is elected for the first time has nothing to do with the list of the preceding year before he was in office. The clerk has delivered them to his predecessor, who alone has authority to collect under them; and the law makes no provision for setting them over to the new sheriff, as in case of prisoners and writs. If he receive the lists and collect the taxes, it must be in consequence of some private arrangement between the predecessor and himself, which cannot undoubtedly bind his sureties in this form of proceeding, for if it could they would be responsible for two years instead of one (at that time sheriff's term was one year). If the

sheriff is reëlected he is then bound to collect the taxes of the preceding year; but this is by virtue of his former appointment, and under the responsibility of his old bond."

In *Slade v. Governor,* 14 N. C., 365, *Daniel, J.*: "In England the office of collector is distinct from that of sheriff, and filled by a different person. In this State the office of collector of taxes is thrown upon the person who shall be elected sheriff. . . . The office of collector of taxes does not expire when that of sheriff does; the last terminates at the end of twelve months from the time he qualified as sheriff, whereas the former does not begin (except when a person liable to pay a tax is about to move away) until the first day of April in the year after he has been appointed sheriff, and he is not compellable to collect the taxes even until after the office of sheriff expires. . . . He gave bond and surety to perform the duties of sheriff; he also gave another bond with surety to perform the duties of collector of public taxes. His office of sheriff began immediately upon his qualification, and expired at the end of one year from that time. His office of collector of public taxes began immediately, so far as related to taxes that might be due and not listed, as, for instance, those imposed on peddlers, showmen, etc., but he had no right to enforce the payment of the dues on the list of taxes (except where a person was about to remove) before the first of April in the year after his appointment. . . . The sureties to his bond for the collection of taxes and settlement with the treasurer were bound until those duties were performed."

In the same case, *Ruffin, J.,* on p. 368: "The case of *Fitts v. Hawkins* (9 N. C., 394) seems to be an authority upon every point that can be made in this case. . . . For the *Chief Justice* (Taylor) states that if the new sheriff receives the lists and collects the taxes it must be in consequence of a private arrangement between him and his predecessor, which would not bind his sureties and make them responsible for two years instead of one. The new sheriff has no authority to collect the taxes even if the lists be delivered to him. He is not the sheriff to whom they are directed, and it is the same as if he were to take them not being sheriff at all. This I have said merely establishes the power and duty of the former sheriff, for the law must intend that the tax shall be collected by somebody. But it is put beyond doubt by the provisions which authorize the sheriff to make these collections and distrain for them at any time within a year after he is accountable at the treasury. Thus, for this purpose his official term is extended beyond his first year, during which his ordinary official duties continue."

In *S. v. Long,* 30 N. C., 419, *Ruffin, C. J.:* "So if a sheriff collect taxes not duly laid, or for a year when the duty of collection belonged to another person as former sheriff, the sureties cannot be made responsible."

In *Perry v. Campbell,* 63 N. C., 258, *Dick, J.:* "In this State the fiscal authority of a sheriff in collecting the public taxes is not a necessary incident of the office of sheriff, and does not always terminate with it. The authority and duty is regulated by the revenue laws of the State. By these laws it is made a duty on or before a certain day to receive the tax lists and proceed to collect and make due returns of the public taxes within a specified period. To enable him to perform this duty he is invested with ample and summary authority. When he receives the tax lists his responsibility begins, and neither his duty nor authority is dependent upon the continuance of the office of sheriff. He cannot free himself from such responsibility except by collecting and paying over the taxes to the proper officers under the provisions of the revenue laws."

In *S. v. McNeill,* 74 N. C., 537, *Bynum, J.:* "The question is simplified by considering that the sheriff was elected for the first time in August, 1874. He then had nothing to do with the tax lists of the preceding year, which ended on 1 April, 1874; and before his election, the clerk, as required by law, had delivered these lists to his predecessor, who alone had authority to collect the taxes. The law has made no provision for transferring the tax lists to the new sheriff, as is provided for delivering prisoners and certain writs. If the new sheriff receives the lists and collects the taxes, it must be by some private arrangement between his predecessor and himself, which, being unauthorized by law, cannot bind his sureties; for if it did bind them they would be bound for three years instead of two, the term of office. If the sheriff is reëlected, as it happened in this case, he is then bound to collect the taxes of the preceding year; but this is by virtue of his former election and under the responsibility of his old bond. The duty of collecting taxes is not an incident to the office of sheriff, though ordinarily discharged by that officer. The duty, therefore, does not terminate with the office, but he is bound to go on and collect the taxes after his term of office as sheriff has expired, and the sureties upon his bond are liable for the money by him collected or that should have been collected after that time. *Perry v. Campbell,* 63 N. C., 257."

In *Dixon v. Comrs.,* 80 N. C., 119: "It is true that the functions of the proper office of sheriff and tax collector, though united and imposed by law upon the same person, are in themselves essentially distinct, and may under some circumstances be disassociated. This occurs

when a sheriff goes out of office at the expiration of his term with an uncollected tax list in his hands, or which ought to have been in his hands, though it may have been delivered afterwards. *Slade v. Governor,* 14 N. C., 365."

In *McNeill v. Somers,* 96 N. C., 472, *Smith, C. J.:* "Nor, in our opinion, does the prolonged authority, given by statute, to proceed in the collection of taxes for which he is accountable after the expiration of the term of office constitute 'an office or place of trust or profit,' according to the true meaning of those words. The office of sheriff was then filled, or about to be filled, by a newly elected successor, and the relator's term had expired. He was no longer 'in office.' nor did he occupy 'a place of trust or profit,' but was simply engaged in completing an unfinished duty which survived the termination of the office before held. The continued right to coerce payment of unpaid taxes after, as before, the determination of the office may be, and indeed is, the correlative of the obligation to account for what is on the tax list, that is, of an official duty, but it remains detached from the office to which it was incident, a separated function, but it is not itself an office of trust or profit. There can be put one incumbent of a single office, and the one term being ended, the other is filled by a successor. The distinction is between the office and the prolonging of the exercise of one of its functions after its determination for all other purposes."

It is established by these authorities that at the time the salary act for Orange County was adopted a sheriff elected for the first time had nothing to do with the tax lists of the preceding year; that the new sheriff had no authority to collect the taxes of the current year; that the sheriff going out of office did have authority to collect these taxes after his term of office expired; that this authority was not an office or place of trust, and in exercising it he was simply engaged in completing an unfinished duty which survived the termination of the office before held.

It is also true that the taxes of 1916 were due, under the provisions of the Machinery Act then in force, 1 October, 1916, and when the tax lists of that year were delivered to the defendant, which was before the plaintiff Rosemond was inducted into office, the total amount of the taxes was charged against the defendant and the sureties on his bond.

These were the existing conditions at the time of the enactment of the salary act of 1915, and the General Assembly is presumed to have had knowledge of them.

It is also a presumption, adopted in the construction of statutes, "that it was the intention of the Legislature to enact a valid, sensible, and just

law, and one which should change the prior law no further than may be necessary to effectuate the specific purpose of the act in question." (Black's Interp. Stat., sec. 41), and "that the Legislature never intends to do an injustice." Black Interp. Statutes, sec. 46.

If, therefore, it was the purpose of the General Assembly to deprive the defendant of the right to collect the taxes of 1916, we would expect to find in the statute a direction to turn over the tax lists to his successor; but there is no such provision, and the construction of the statute contended for by the plaintiffs would work a serious injustice, as it would take from the defendant, who was elected and inducted into office prior to the enactment, nearly the whole of the emoluments of his office for one year without substituting any compensation therefor.

The act manifests a clear intention to the contrary, by the provision: "That this act shall be in full force and effect from and after the first Monday in December, 1916, as to all *officers* except clerk, and as to him on first Monday in December, 1918."

The officers affected by the act had already been elected and were in office when it was enacted, and the operation of the act was postponed for the purpose of giving to the incumbents the salaries and fees belonging to the officers for the terms they were then filling.

If this is not so, the act discriminates against the sheriff, by giving the register of deeds and treasurer all the fees for two years and to the clerk for four years, while it deprives the sheriff of his commissions for collecting the taxes for 1916, which is, as said in plaintiff's brief, "practically the only value the sheriff's office has" in Orange, and the act shows on its face an intent to treat all alike.

The act, considered as a whole, shows that it was the purpose of the General Assembly to abolish the fee system in Orange County and to provide fixed salaries in lieu thereof; to treat all of the officers affected by the act alike and to do no injustice, and to this end the operation of the act was postponed so that the officers already elected might have all of the emoluments of their terms; to provide fixed salaries in substitution for fees and commissions to which the officer receiving the salary would have been entitled but for the act, and not to give one a salary at the expense of another or in the place of fees to which another was entitled.

If we were to hold otherwise we would take from the sheriff his commissions for one year without compensation therefor and without express legislative declaration to that effect, and would require these commissions to be turned into the treasury of Orange to be used in the payment of the salaries of other men, thereby imposing upon the sheriff the burden of the payment of salaries for one year.

The case of *Mills v. Deaton,* 170 N. C., 388, is radically different from the one before us. In the first place, the statute then under consideration, relating to the salaries of officers in Iredell County, provided that all *uncollected tax levies* should be turned over to the county commissioners on the first Monday of December of each year; and there is no such provision in this statute. Again, the defendant Deaton was reëlected, and he accepted the office under the act fixing his salary.

Upon a careful consideration of the questions involved, we are of opinion there is no error.

Affirmed.

BROWN, J., concurring: In my opinion, there is a marked distinction between this case and *Mills v. Deaton,* 170 N. C., 388. In that case Sheriff Deaton succeeded himself. When he qualified in December, 1914, for the second term the office of sheriff became a salaried office, which compensated the incumbent for all loss of fees. At that time Deaton had the tax lists of 1913 in his hands, which had been given him 1 October, 1914. As he succeeded himself, we held that he could not receive the salary and the commissions both; and, further, the Iredell statute differs from the statute now under consideration in the material particular pointed out in the opinion of the court.

In this case the sheriff did not succeed himself, and went out of office with a partially uncollected tax list in his hands with which he had been charged and for the collection of which he had given bond. It was his privilege and duty under the statute to finish the collection and to account for the taxes. His successor, Rosemond, had no authority to collect these taxes. Only the defendant Bain was invested with that authority. Inasmuch as Bain only could finish the collection, he was entitled to deduct the commission for collecting in his settlement. The Legislature failed to invest the succeeding Sheriff with the power to collect the preceding year's taxes. As that could be done only by Bain, and as he was still charged with their collection, it evidently was not the purpose of the Legislature to deprive him of his commissions.

A similar condition arises when a sheriff dies in office. His successor has no authority to collect the tax lists in the deceased sheriff's hands for collection. The law provides that the bondsmen shall appoint a tax collector, and he receives his compensation in the commissions allowed by law for collecting.

CLARK, C. J., dissenting: Custom cannot avail against an act of the Legislature repealing it. The arm of the lawmaking body of the State is not so shortened that it cannot repeal a custom as well as a former statute.

Chapter 46, Public Local Laws 1915, changed the compensation of all the county officers of Orange to the salary basis. It is entitled "An act to fix salaries for public officers in Orange County." It provides (section 1) that the sheriff of that county may appoint a deputy in each township who shall receive the fees for serving summons and other process and commissions on executions except the deputy for Hillsboro Township, who shall receive a salary of $600 per annum. Section 2 provides: *"All other fees, commissions, profits, and emoluments of all kinds* now belonging to or appertaining to, or hereafter by any law belonging or appertaining to the sheriff by virtue of his office shall be faithfully collected by him and turned over to treasurer of said county, to be disposed of as hereinafter provided." This is explicit and cannot admit of two constructions. Section 14 provides that "This act shall be *in full force and effect* on and after the first Monday in December, 1916, as to all offices except clerk, and as to him the first Monday in December, 1918."

Section 3 provides that the jailer shall be paid a salary, to be fixed by the county commissioners. Section 4 provides that "Said sheriff shall receive a salary of $1,600 per annum *in lieu of all other compensation whatever,"* and provides, further, that his deputy for Hillsboro Township shall be paid $600 per annum and that the county shall pay the premium on the sheriff's bond. All the above to be paid by the county "out of the funds herein created."

The statute then provides for the amount of the salary of the Superior Court clerk, the register of deeds, and treasurer; and section 9 provides, under a penalty, that all the officers "hereinbefore mentioned shall faithfully perform all the duties of their several offices imposed upon them by law, and shall receive no compensation nor allowance whatever for any extra or additional service rendered to the county or State or other Government agencies under existing law or laws hereafter enacted, except as hereinbefore provided."

Section 10 provides: "The officers hereinbefore named are each required to keep a fee book upon which shall be entered, immediately upon their receipt, all fees or *commissions,* and are required to turn over to the treasurer of Orange County all moneys coming into their hands from such source"; that the treasurer shall audit the books and shall post at the courthouse door an itemized statement of all the fees and commissions, and that the county commissioners shall supervise the whole matter. And section 11 provides that any officer failing to collect or turn over any fees and commissions shall be guilty of misdemeanor. This would apply to the defendant if he received any commissions after the date the act was to be "in full force and effect."

COMMISSIONERS *v.* BAIN.

Section 12 provides. "All moneys coming into the hands of the treasurer of Orange County by virtue of this act shall be held by him as a separate and distinct fund, and after paying the monthly salaries and allowances provided for in this act and after paying premiums of sheriff and treasurer, the balance of said fund shall semiannually be divided equally between the public school fund and the fund for public roads," with a provision that if at any time this fund is insufficient "to pay the monthly salaries as they become due, the commissioners may borrow temporarily the amount necessary from the general county fund." Section 13 repeals "All laws and parts of law in conflict herewith."

This act was ratified 29 January, 1915, and was clearly expressed to put in force the will of the people of that county, doubtless made after full public discussion, and enacted by the Legislature at the instance of the Senator and Representative from that county, that on the first Monday in December, 1916, all fees and commissions to county officials theretofore authorized by any law or custom whatsoever should be paid in to the county fund and from that day said officials should receive in lieu thereof the salaries authorized in the act as their sole compensation for any and all services, whether ordinary or extra services, and whether under existing laws or laws thereafter to be enacted. The only exceptions made are that the deputy sheriffs in the townships, other than Hillsboro, shall continue to receive fees for serving process and commissions on execution sales, and that the clerk of the court should continue to receive fees up to the first Monday in December, 1918. With this exception the act was to be in full force and effect on the first Monday in December, 1916. The reason for the exemption of the clerk till December, 1918, was because his term of office, unlike that of the other officers, did not expire in December, 1916.

Under the Constitution the term of the defendant as sheriff expired on the first Monday in December, 1916. He was notified by this statute, ratified 29 January, 1915, that on said first Monday in December, 1916, all perquisites and fees of every kind allowed to the sheriff of Orange by virtue of his office or any statute or custom to the contrary should be paid into the county treasury. It was within the power of the Legislature to have made this change take effect on the ratification of the act. But with great liberality the General Assembly made the act to take effect as to all the officers, except the clerk, on the first Monday in December, 1916, and, as to the clerk, two years later. The defendant, therefore had nearly two years notice that all fees and commissions pertaining to his office should be turned into the county treasury after the first Monday in December, 1916.

25—173

This act was the expression of the sentiment of the county of Orange that compensation by fees to the public officers was excessive and that there should be substituted the payment of fixed and definite salaries, and that all fees and commissions theretofore received should be paid into the public treasury, out of which these salaries were to be taken, and the surplus should be devoted to the public schools and public roads. With great liberality the act was not to take effect until the dates named, and in the meantime the sheriff then in office was allowed to receive the commissions on the collection of taxes for 1914, 1915, and even on the taxes of 1916, collected before the first Monday in December of that year.

The object of this legislation was for the relief of the people from what they deemed excessive compensation, and should not be construed as putting upon them additional and unnecessary expenses. It is no aid in construing the language, and the evident intent of this statute, to quote decisions made prior to its enactment under which the sheriff after the expiration of his term received compensation for collecting the tax list, for, as already stated, the sole purpose of the statute was to change the old system and to substitute a new system by the payment of salaries.

The Legislature had full power to make the act apply to one or to all officers, or to some and to exempt others. It exempted the clerk in this case till December, 1918, because the term of the clerk, unlike that of the sheriff and other county officers, did not expire in December, 1916.

The power of the Legislature to change the compensation of all county officers has been settled beyond question since the decision in *Mial v. Ellington,* 134 N. C., 131, which overruled the doctrine which had been laid down in *Hoke v. Henderson,* 15 N. C., 1, that "office is property," and that the public had no control over such matters after an officer had got an office in his hands. The power of the Legislature as to this very matter of changing compensation by fees into compensation by salary is fully recognized in *Mills v. Deaton,* 170 N. C., 388. The language of the present statute expresses its intention as clearly as the power is unquestioned.

In *Mills v. Deaton,* 170 N. C., 386, *Brown, J.,* said (p. 388) : "The explicit language leaves no room for construction. When the sheriff received the tax list, 1 October, 1914, he was required by law to collect them upon a commission basis, and when that was changed to a salary, the sheriff was likewise compelled to collect the taxes for the salary fixed. *It does not matter that the present sheriff was elected, or whether some one else was elected in his place, the office of sheriff is one and indivisible, and the salary fixed for it under this statute is intended to cover all the duties.*"

The object of government is not to furnish the honors and the emoluments of office as a favor to individuals, nor have officers any property rights in an office or its compensation. Public officers are (not as a figure of speech, but as a matter of fact and of law) public servants, and except in those cases in which the Constitution forbids a change of compensation the Legislature can alter, increase, or diminish, at will, the compensation of any public officer. The officer has the alternative of resigning if he so wishes.

It appears on the argument here that prior to the enactment of this statute the emoluments of the sheriff's office in Orange County aggregated about $4,000 annually. This chapter 46, Public-Local Laws 1915, substituted for all the fees and commissions formerly allowed the sheriff (amounting annually to $4,000) a salary of $1,600, with other allowances for deputies (as above stated) and premium on his bond, making an aggregate cost of that office to the county treasury of about $2,400.

The defendant in this case had already served two terms as sheriff of Orange and was entering upon the third term at the time this act was ratified, in January, 1915. It gave him nearly two years notice that *at the expiration of his term in December, 1916,* all officials would be paid by salaries and that after that date all fees and all commissions theretofore allowed must be paid into the public treasury.

Under the defendant's claim, if allowed, the county, instead of making an economy of $1,600 per annum in the sheriff's office beginning on the first Monday in December, 1916, will have to pay more than double: that is, the sheriff whose term had expired will be paid at the rate of at least $4,000 (and, indeed, more, for it is claimed by him that the greater part of his fees were in the collection of the tax list) until all the taxes of 1916 are collected, while at the same time the new sheriff will be receiving the full salary and expenses of $2,400 per annum out of the treasury, thus costing the county at the rate of at least $6,400 per annum. It is hardly conceivable that so intelligent a population as that of the county of Orange would have asked the Legislature to continue the emoluments of the sheriff, *whose term has expired,* at the rate of at least $4,000 a year and at the same time tax the public at the rate of $2,400 per annum for the sheriff who is in office. It is not reasonable to suppose that the Senator and the Member from Orange advocated a statute leading to any such result, or that the Legislature could have so understood in enacting this statute, whose object was to relieve the taxpayers of the county, and not to increase their burdens.

On the first Monday in December, 1916, by virtue of the statute, the salary of $1,600 to the sheriff, and incidentals of $800 other allowances,

became a charge on the county treasury of Orange. At the same time the county was to be recouped by the payment into the public treasury of "all the commissions and fees of every kind" received after that date by the sheriff's office, which were at least at the rate of $4,000. The defendant contends that because prior to the change made by the act of January, 1915, the outgoing sheriff received the fees for collecting the tax list, so far as he had not already collected it, that the court should now read into this statute an intention that the former sheriff should have the commissions for collecting the taxes, when there is no indication whatever of such intention shown in the statute, which is expressly to the contrary. This would leave the county only the other fees of the sheriff (which it appears amounted to less than $20 in ninety days from the first Monday in December) to recoup the salary allowed the new sheriff and his deputies of $200 per month, for the process fees continue to go to the sheriff's deputies, except as to Hillsboro Township.

The county of Orange and its taxpayers, by the construction the defendant asks, are penalized heavily for wishing to make the change which so many other counties have had adopted to their satisfaction and to economy in the public expenditure. In Orange the same statute is made a heavy loss to the public instead of an economy.

The Public-Local Laws of 1911, 1913, 1915 show that there were 48 acts putting county officers on salary (and there have been others since), only 9 of which have any express provision requiring officers to turn over their books and papers at the end of the term. The other 37 rely upon the common-law rule which treats that as a necessary incident of leaving any office. Only two of these 48 statutes permit the outgoing sheriff to retain the tax list of the preceding year. Such enactment is not in this statute, and its absence leaves no ground for the defendant's contention that he is entitled to do so notwithstanding the clear-cut, incisive substitution, at the date fixed, of the new system of salaries for the former custom.

The collection of taxes is not an inherent part of the duties of sheriff. 37 Cyc., 1192. It was not so in England, from which we derived our system of laws, nor is it so in many of the States of this Union. 35 Cyc., 1489. But if it were, it was competent for the Legislature to change the method of compensation. The people of Orange had the right to ask for such change and the Legislature had the power to order it. In doing so they prescribed the date when the change should take place and that after that time the sheriff should receive no fees whatever for the collection of taxes, but allowed him, instead, a salary which began at that date for all the sheriff's duties of every kind. The

act not only does not permit, but prohibits, the allowance, either to the old sheriff or the new, of any fees or commissions, for any work whatever, since the first Monday in December, 1916, beyond the salary and allowance therein provided for him and his deputies.

After the first Monday in December, 1916, the act permits no commissions to any one for collecting taxes, and the sheriff whose term has expired cannot claim them, any more than the new sheriff can claim them after his term shall expire in December, 1918.

The plaintiffs are the commissioners of Orange, and their attorney in this case was the Senator from Orange in 1915 (Mr. Nash), who, expressing the will of the people of that county, drafted and procured the passage of this act, whose intent, very clearly expressed, provides that after the first Monday in December, 1916, all fees and commissions theretofore paid to county officers should be paid into the county treasury (section 12), out of which fund the salaries provided in the act shall be paid to the officers, and (section 9) that the officers shall receive after that date "no compensation or allowance whatsoever" except as otherwise provided in the act, which exception specifies that the clerk shall continue to receive fees for two years thereafter, and that the deputy sheriff shall receive process and commissions on executions in certain townships. Neither the former sheriff nor any other officer or any other fees or commissions are excepted. The object of this action is to enforce the provisions of this statute enacted after full discussion at the instance of the people of Orange County in a matter concerning their own county and restricting their county expenses.

The cardinal idea, repeated again and again throughout the act and which runs through it as its warp and woof, is that on the date named (nearly two years ahead) the system previously in force, by which county officials were compensated by fees and commissions, was absolutely and utterly changed, and fixed salaries substituted. The slight exception made in the act, of process fees to the deputy sheriff in some of the townships, emphasizes the statement in the act that "except as hereinbefore provided" the officers shall thereafter receive *no compensation or allowance whatsoever,* under existing laws or laws hereinafter enacted, except the salaries named in the act.

The act places all the duties of the office on the new sheriff, and all the compensation is his, after the date specified. If the old sheriff insists on collecting the taxes, the commissions, nevertheless, must be paid into the county treasury, for the act provides that fees and commissions are *all* to be paid into the treasury and out of them the salaries, to a small amount, are to be paid. Least of all is there any indication that the former sheriff, *whose term has expired,* shall nevertheless be allowed

to receive several thousand dollars in commissions notwithstanding the act, while the taxpayers. are to pay the new sheriff and his deputies $200 per month. The defendant has not pointed out a line nor a word in the act which justifies him in making such claim, which is contrary to the whole scope of the act and the prohibitions therein.